IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WAYNE WILLIAM TUCKER,
      Plaintiff,

vs.                           Case No.: 3:19cv1713/RV/EMT

JULIE L. JONES, et al.,
      Defendants.
_____/

## ORDER and REPORT AND RECOMMENDATION

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC") proceeding pro se and in forma pauperis, commenced this action by filing a civil rights complaint (ECF No. 1). Presently before the court is Plaintiff's Motion to Exceed Page Limit in which he requests that the court accept his Second Amended Complaint, which is 31 pages in length and has 102 pages of attached exhibits (ECF Nos. 18, 19). Approximately ten weeks after Plaintiff filed those documents, he filed a 25-page supporting memorandum with another 10 pages of attached exhibits (ECF No. 20).

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(C); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b). After careful consideration of the issues presented by Plaintiff, it is the

opinion of the undersigned that all but two of Plaintiff's claims and all but four

Defendants should be dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B).  Further,

upon winnowing down the claims and Defendants, it is apparent that venue for this

case is proper in the Panama City Division of the Northern District and thus should

be transferred there, pursuant to Local Rule 3.1(B)–(C).

I.    BACKGROUND

Plaintiff was housed at Okaloosa Correctional Institution when he

commenced this case, and he is still housed there.  His Second Amended Complaint

arises out of events that occurred while he was housed at Apalachee C.I. East, from

February of 2017 to December of 2018 (ECF No. 19 at 8–28).[1]  Apalachee C.I. is

located in Jackson County, Florida, which is included in the Panama City Division

of the Northern District.  *See* N.D. Fla. Loc. R. 3.1(A)(2).

Plaintiff names nineteen (19) Defendants[2] and asserts ten (10) claims.  The

crux of Plaintiff's claims relates to the medical treatment he claims he was provided,

---

[1] The court refers to the page numbers automatically assigned by the court's electronic filing system, rather than the page numbers of the original document.

[2] The named Defendants are the following:  Julie L. Jones, Secretary of the FDOC at the time of the events at issue; Centurion Health Services, Inc.; Jackson County Department of Health ("DOH"); Gilead Sciences, Inc.; J. Barfield, Warden of Apalachee C.I.; Sandling Speeding, a doctor with the Jackson County DOH; S. Streetman, an ARNP with the Jackson County DOH; S. Hosseini, a doctor employed by Centurion at Apalachee C.I.; John P. Lay, a doctor employed by Centurion at Apalachee C.I.; M.B. Pliskin, an ARNP employed by Centurion at Apalachee C.I.;

and allegedly not provided, for his Acquired Immune Deficiency Syndrome ("AIDS").[3]  All of Plaintiff's claims assert violations of the Eighth Amendment. One of his claims (Claim Five) also asserts a Fourth Amendment violation.  Plaintiff seeks declaratory relief, injunctive relief, compensatory damages in the amount of $10 million, punitive damages in the amount of $10 million, mental and emotional damages in the amount of $5 million, and costs (*id.* at 30–31).

## II.    RELEVANT LEGAL STANDARDS

### A.    Statutory Screening Standard

Because Plaintiff is a prisoner proceeding in forma pauperis, the court must dismiss this case if the court determines it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915(e)(2)(B).  The statutory language

---

Edenfield, an ARNP employed by Centurion at Apalachee C.I.; A. Swearingen, a nurse employed by Centurion at Apalachee C.I.; K. Williams, a nurse employed by Centurion at Apalachee C.I.; Murrell, a nurse employed by Centurion at Apalachee C.I.; L. Prescott, a nurse employed by Centurion at Apalachee C.I.; C. Holloway, a nurse employed by Centurion at Apalachee C.I.; Carter, a nurse employed by Centurion at Apalachee C.I.; Angela Gaskins, the FDOC's Bureau Chief of Special Diet Prescription Order/Adult Diet Master Menu; and Brenda Patterson, the FDOC's Lead Public Health Nutrition Consultant over Special Diet Prescription Order/Adult Diet Master Menu (ECF No. 19 at 2–4).

[3] Plaintiff alleges he was diagnosed with the disease in 1998, and given three (3) months to live.

"tracks the language of Federal Rule of Civil Procedure 12(b)(6)," therefore, dismissals for failure to state a claim are governed by the same standard as Rule 12(b)(6). *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997). The allegations of the complaint are taken as true and construed in the light most favorable to Plaintiff. *See Davis v. Monroe Cty. Bd. of Educ.*, 120 F.3d 1390, 1393 (11th Cir. 1997). The court may consider documents attached to a complaint or incorporated into the complaint by reference, as well as matters of which a court may take judicial notice. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Saunders v. Duke*, 766 F.3d 1262, 1272 (11th Cir. 2014).

To survive dismissal at the screening phase, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). The plausibility standard is met only where the facts alleged enable "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The complaint's allegations must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B.    Eighth Amendment Standard

The Eighth Amendment prohibits the "inflict[ion]" of "cruel and unusual punishments." U.S. Const. amend VIII. Under the Amendment, the "[f]ederal and

state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration." *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). As particularly relevant here, the Supreme Court has held that prison officials violate the bar on cruel and unusual punishments when they display "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate-indifference claim entails both an objective and a subjective component. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004). First, the inmate must establish "an objectively serious medical need"—that is, "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention"— that, "if left unattended, poses a substantial risk of serious harm." *Id.* (alteration adopted) (quotation omitted). Second, the inmate must prove that prison officials acted with deliberate indifference to that need by showing (1) that they had "subjective knowledge of a risk of serious harm" and (2) that they "disregard[ed]" that risk (3) by conduct that was "more than mere negligence." *Id.*

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020). The Eleventh Circuit has held, for instance, that the Constitution does not require that the

medical care provided to prisoners be "perfect, the best obtainable, or even very good." *Harris*, 941 F.2d at 1510 (quotation omitted). Rather, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 1505 (quotation omitted). The Eleventh Circuit has also emphasized—as have its sister circuits—that "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Id.*; *accord, e.g., Lamb v. Norwood*, 899 F.3d 1159, 1162 (10th Cir. 2018) ("We have consistently held that prison officials do not act with deliberate indifference when they provide medical treatment even if it is subpar or different from what the inmate wants."); *Kosilek v. Spencer*, 774 F.3d 63, 82 (1st Cir. 2014) (en banc) ("[The Eighth Amendment] does not impose upon prison administrators a duty to provide care that is ideal, or of the prisoner's choosing.").

## III.    DISCUSSION

The facts included in this section are taken from Plaintiff's Second Amended Complaint and the documents attached thereto (ECF No. 19).

### A.    Claim One—Eighth and Fourteenth Amendment claims against former Secretary Jones, Centurion, Dr. Hosseini, and Nurses

**Swearingen, Williams, Prescott, Murrell, and Holloway (Second Amended Complaint at 8–10).**

**Claim Four—Eighth and Fourteenth Amendment claims against former Secretary Jones, Centurion, Warden Barfield, Dr. Hosseini, and Nurses Swearingen, Williams, Murrell, Prescott, and Holloway (Second Amended Complaint at 14–15).[4]**

Plaintiff alleges he was prescribed Complera, an antiviral medication, in 2014. He alleges the manufacturer of Complera, Defendant Gilead Sciences, Inc., directs that it be taken with a meal of at least 400 calories. Plaintiff alleges he was transferred to Apalachee C.I. on February 23, 2017 (Second Amended Complaint at 8–9). He alleges his viral load was "undetectable" and his "CD4" or T-cell count was 1259, which is "normal." In Claim One, Plaintiff complains about the **timing** of the nurses' delivery of the Complera. Plaintiff alleges upon his arrival, he was placed in confinement for sixty days. He alleges Nurse Swearingen, Nurse Williams, Nurse Prescott, Nurse Murrell, and Nurse Holloway dispensed the Complera two hours before dinner. Plaintiff alleges he took the Complera when it was delivered for six days. He alleges that on March 2, 2017, he told Nurse Swearingen that the doctor at his prior institution had issued him a medical pass

---

[4] For organizational purposes, the court has consolidated its discussion of some of Plaintiff's claims.

directing that he eat before taking the medication.  Plaintiff alleges he also told Nurse Swearingen he suffered severe stomach pain and vomited blood when he took the Complera prior to dinner.  Plaintiff alleges Nurse Swearingen told him that if he did not take the Complera when the nurses delivered it, he would not get it at all.  Plaintiff alleges Nurse Swearingen left and never returned with the Complera that day.  Plaintiff alleges during the remainder of his stay in confinement (approximately 55 days), Nurses Swearingen, Williams, Prescott, Murrell, and Holloway delivered the Complera two hours before dinner, even though he told them he was supposed to take it with a meal.  Plaintiff alleges he was "unable" to take the medication due to their conduct (*id.* at 10), and as a result, his viral load dramatically increased and his "CD4" count dramatically decreased.

Plaintiff's disagreement with the nurses' timing of his medication does not state a plausible claim of deliberate indifference.  The nurses' knowledge that Plaintiff was experiencing stomach pain and vomiting does not suggest they knew that it was the result of the timing of the medication as opposed to side effects of the medication itself.  Indeed, Plaintiff admits these symptoms are published side effects of the medication even when taken as recommended, and he attached the manufacturer's tear sheet and Full Prescribing Information about Complera (Second Amended Complaint, attached Exhibit 1, ECF No. 1-1 at 2–17).  The publication

states Complera should always be taken with food, and it should be taken "exactly as prescribed by your doctor" (*id.* at 2, 8). The publication also states, however, that common side effects of taking Complera include vomiting and stomach pain and discomfort (*id.* at 3).

Plaintiff has not stated a plausible Eighth Amendment claim against Nurses Swearingen, Williams, Prescott, Murrell, or Holloway with respect to the timing of the Complera. Therefore, Claim One should be dismissed with prejudice.

In Claim Four, Plaintiff complains about the **manner** in which the nurses administered the Complera (Second Amended Complaint at 14–15). Plaintiff alleges Centurion implemented policies governing the administration of medication to inmates, including a policy requiring nurses to witness inmates take their medication (*id.* at 9, 10, 15), obviously to prevent inmates from diverting it. Plaintiff alleges the nurses floated the Complera in water, which caused the medication to begin dissolving in his throat instead of his stomach, resulting in heartburn and pain in his throat. Plaintiff alleges he and one of his medical providers from the Jackson County DOH (the entity which prescribed the Complera) told the institutional nurses that floating the medication in water was not an appropriate method of administration, but the practice continued from February 23, 2017 to June 29, 2018, when his antiviral medication changed from Complera to Odefsey (*id.* at 18).

Plaintiff alleges he suffered a painful throat and severe heartburn as a result of the manner in which the nurses administered the Complera.

As an initial matter, Plaintiff's admission that he did not take the Complera during period March 1–August 15, 2017 (*see* Second Amended Complaint at 10, 12) belies his allegation that he suffered physical effects from the medication administration practice during that period.  Additionally, the nurses' knowledge that Plaintiff was experiencing a painful throat and heartburn does not suggest they knew that floating the medication posed a substantial risk of serious harm to his health. Further, considering Plaintiff's admitted refusal to ingest the antiviral medication, and his allegation that his viral load dramatically increased and his "CD4" count dramatically decreased when he did not take the medication, the nurses' floating it to ensure he took it was objectively reasonable.  The mere fact that a different medical provider (a nurse Streetman from the Jackson County DOH) disagreed with the propriety of the practice is not enough to show deliberate indifference. *See Harris*, 941 F.2d at 1505; *accord, e.g., Lamb*, 899 F.3d at 1163 (holding that "disagreement alone" does not constitute deliberate indifference); *Kosilek*, 774 F.3d at 90 ("The law is clear that where two alternative courses of medical treatment exist, and both alleviate negative effects within the boundaries of modern medicine, it is

not the place of our court to second guess medical judgments or to require that the DOC adopt the more compassionate of two adequate options." (quotation omitted)).

Plaintiff has not stated a plausible Eighth Amendment claim against Nurses Swearingen, Williams, Prescott, Murrell, or Holloway with respect to the floating of the Complera. Therefore, Claim Four should be dismissed with prejudice.

As a final matter with respect to these claims, because none of the nurses committed an Eighth Amendment violation with respect to the timing and manner in which they administered the Complera, Plaintiff cannot establish liability on the part of the supervisory Defendants named in Claims One and Four. *See Myers v. Bowman*, 713 F.3d 1319, 1328 (11th Cir. 2013) ("[A] supervisor may not be held liable under section 1983 unless the supervised official committed an underlying violation of a constitutional right."); *Rooney v. Watson*, 101 F.3d 1378, 1381 (11th Cir. 1996) ("[A]n inquiry into a governmental entity's custom or policy is relevant only when a constitutional deprivation has occurred.").

**B.    Claim Two—Eighth and Fourteenth Amendment claims against former Secretary Jones, Centurion, Dr. Hosseini, and Nurse Pliskin (Second Amended Complaint at 10–12).**

**Claim Six—Eighth and Fourteenth Amendment claims against former Secretary Jones, Centurion, Dr. Hosseini, and Nurses Pliskin, Swearingen, Williams, Murrell, and Carter (Second Amended Complaint at 16–18).**

In Claim Two, Plaintiff alleges that on March 1, 2017, Defendant Nurse Pliskin told him she would renew all of his medications, but she failed to renew his prescriptions for Extra Strength Excedrin and Naproxen (Second Amended Complaint at 10–12, 16). Plaintiff alleges these two prescriptions alleviated side effects from the Complera, including back pain, bone and joint pain, migraines, muscle pain, pain in his upper back and neck from "Buffalo Hump,"[5] swelling in his feet and ankles, painful mouth sores, and pain from swelling of his face, lips, tongue, and throat. Plaintiff alleges on May 25, 2017 and June 8, 2017, he went to sick call and requested that Nurse Pliskin renew his prescriptions for Extra Strength Excedrin and Naproxen, but she refused and accused him of stockpiling and selling the pain medications. Indeed, in Claim Six, Plaintiff alleges he "completely ran out of" Naproxen and Extra Strength Excedrin on April 1, 2018, thus admitting he had stockpiled it prior to that date (id. at 16). Because Plaintiff's own factual allegations refute his claim that Nurse Pliskin deprived him of pain medication prior to April 1, 2018, Claim Two should be dismissed as frivolous.

In Claim Six, Plaintiff alleges his medical providers with the Jackson County DOH changed his antiviral medication from Complera to Odefsey on June 29, 2018

---

[5] According to the Complera publication Plaintiff submitted, "Buffalo Hump" is an increased amount of fat in the upper back and neck (ECF No. 1-1 at 3).

(Second Amended Complaint at 17). Plaintiff alleges he suffered severe pain as a side effect of the Odefsey and his chronic illness. Plaintiff attached the manufacturer's Formulary Monograph, tear sheet, Full Prescribing Information, and Patient Information for Odefsey (Second Amended Complaint, attached Exhibit 1-A, ECF No. 1-1 at 19–96).

Plaintiff states he was seen by Nurse Carter on July 23, 2018, and asked for renewal of his prescriptions for Extra Strength Excedrin and Naproxen to treat his pain (Second Amended Complaint at 17). He states he saw Nurse Streetman from the Jackson County DOH on August 14, 2018, and complained about the institutional medical staff's failure to renew his prescriptions. Plaintiff states Nurse Streetman recommended to Dr. Hosseini that he prescribe the medications. Plaintiff states he saw various institutional medical providers on August 20, August 29, August 31, and September 4, 2018, including Nurse Murrell, Dr. Hosseini, Nurse Swearingen, Nurse Williams, and Nurse Prescott. Plaintiff states none of the medical providers prescribed pain medication until September 4, 2018, approximately five months after his stockpile ran out (*id.* at 18). Plaintiff seeks to hold former Secretary Jones and Centurion liable for the medical staff's failure to prescribe the pain medications sooner, which allegedly caused him to suffer pain during those five months.

The court previously informed Plaintiff that an Eighth Amendment claim requires factual allegations which plausibly suggest deliberate indifference, not just negligence, on the part of his medical providers (*see* ECF No. 15). Despite this advisory, Plaintiff has not alleged any facts which suggest the five-month delay in renewing the pain medication was due to deliberate indifference, as opposed to mere negligence. Plaintiff thus has failed to state a plausible claim of deliberate indifference as to Dr. Husseini or any of the nurses, and for this reason Plaintiff cannot state a plausible constitutional claim against either former Secretary Jones or Centurion, whom he also names in Claim Six. Claim Six should be dismissed with prejudice for failure to state a plausible claim for relief.

### C.    Claim Three—Eighth and Fourteenth Amendment claims against former Secretary Jones, Centurion, Dr. Hosseini, Nurse Pliskin, Nurse Edenfield, Jackson County DOH, Dr. Speeding, and Nurse Streetman (Second Amended Complaint at 12–14).

Plaintiff alleges Complera has forty-three **possible** side effects as listed in the tear sheet and Full Prescribing Information he attached (Second Amended Complaint at 12 and attached Exhibit 1). He alleges his medical file documents that

during the past 19–20-year period he had been prescribed the following medications,

supplements, and health care products for "pre-existing medical conditions":[6]

- Loperamide (generic Imodium) (to decrease frequency of diarrhea)
- Hydrocortisone cream (to relieve itching)
- Chlorhexidine Gluconate (germicidal mouth rinse for mouth sores)
- Bacitracin ointment (antibiotic for splitting lips and cold sores)
- Triamcinolone Acetonide ointment (to treat rashes and skin irritation)
- Muscle rub (for sore muscles)
- Visine eye drops (to relieve allergy symptoms)
- Ranitidine (for heartburn)
- Tolnaftate antifungal powder (for jock itch and yeast infection)
- Hemorrhoidal ointment
- C.P.M. (antihistamine for hay fever)
- Flunisolide nasal spray (for sinus problems and runny nose)
- Tera Gel shampoo
- Xopenex inhaler (for asthma)
- Alvesco inhaler (for asthma)
- Folic acid
- Vitamin B-12
- Terbutaline (for asthma)
- A + D ointment
- Lisinopril (for blood pressure)
- Omega-3 fish oil (for cholesterol)
- Gas Relief Plus
- Carbamide peroxide ear drops (to soften and loosen ear wax)
- Sunblock

(Second Amended Complaint at 12–13). Plaintiff alleges he his file also reflects that

he had received the following passes and accommodations:

---

[6] Plaintiff also included Extra Strength Excedrin, Naproxen, Ensure supplement drinks, and a 4,000-calorie diet in his list, but those items are discussed separately in Claims Two, Six, Seven, and Eight.

- Shoe insoles
- Low/bottom bunk
- No standing more than 15 minutes
- No pushing, pulling, or lifting over 15 pounds
- Brogan boots
- Cotton blanket
- Extra blanket
- Hernia belt
- Jacket
- Take medication after meals
- Slow eating
- Use bathroom as needed

(Second Amended Complaint at 13).

Plaintiff alleges upon his arrival at Apalachee C.I., he was promptly seen by Defendants Dr. Hosseini, Nurse M. Pliskin, and Nurse Edenfield (Second Amended Complaint at 13). Plaintiff states they advised him that since the Jackson County DOH prescribed the antiviral medication, that agency was also responsible for prescribing medications to treat side effects. Plaintiff alleges Defendant Nurse Streetman from the Jackson County DOH told him the opposite was true. He alleges Nurse Streetman told him that her supervisor, Defendant Dr. Speeding, stated that the DOH was responsible for prescribing **only** the antiviral medication, and the FDOC was responsible for treating any side effects.

Plaintiff alleges no facts which plausibly suggest that any Defendant subjectively knew that the failure to prescribe the extensive list of treatments and

accommodations placed him at substantial risk of serious harm.  Further, the mere fact that Plaintiff's previous medical providers provided the listed treatments and accommodations at various times over the past 19–20 years is not enough to show that a current medical provider's failure to prescribe them rose to the level of deliberate indifference.  *See Harris*, 941 F.2d at 1505; *accord, e.g., Lamb*, 899 F.3d at 1163 (holding that "disagreement alone" does not constitute deliberate indifference); *Kosilek*, 774 F.3d at 90.

Plaintiff's allegations fail to state a plausible claim of deliberate indifference against any Defendant.  Therefore, Claim Three should be dismissed with prejudice.

### D.    Claim Five—Fourth, Eighth, and Fourteenth Amendment claims against former Secretary Jones, Centurion, and Dr. Hosseini (Second Amended Complaint at 15–16).

In Claim Five, Plaintiff alleges Secretary Jones, Centurion, and Dr. Hosseini violated his Fourth and Eighth Amendment rights by charging him a $5 co-payment for sick-call visits from February 23, 2017, to December 3, 2018 (Second Amended Complaint at 15–16).  Plaintiff alleges the co-pays were either deducted from his inmate account or imposed as liens against his account.  Plaintiff alleges his sick-call visits were for routine follow-up care; therefore, the co-payment should have been waived.  He contends charging him a co-payment constituted an unreasonable

seizure under the Fourth and Fourteenth Amendments, and deliberate indifference to his medical needs under the Eighth Amendment.

Assessment of a co-payment for medical services is not an unreasonable seizure under the Fourth Amendment. Likewise, the mere fact that Plaintiff was charged a co-pay, without any allegation that necessary medical treatment was delayed or denied as a means to coerce payment, does not remotely state a plausible Eighth Amendment claim. Therefore, Claim Five should be dismissed with prejudice.

### E.    Claim Seven—Eighth and Fourteenth Amendment claims against former Secretary Jones, Centurion, Dr. Hosseini, and Nurses Pliskin, Swearingen, Williams, Murrell, and Carter (Second Amended Complaint at 18–20).

Plaintiff alleges prior to his transfer to Apalachee C.I., his medical providers prescribed Ensure supplement drinks to prevent lipoatrophy (build-up and/or loss of body fat) and severe weight loss caused by AIDS and antiviral medication (Second Amended Complaint at 18–19). Plaintiff states he requested a prescription for Ensure during four appointments with institutional medical providers (including Nurse Carter, Nurse Murrell, Dr. Hosseini, Nurse Swearingen, and Nurse Williams)

during the five-week period from July 23 to August 31, 2018.[7]  Plaintiff alleges

during his visit with Dr. Hosseini on August 29, 2018, Dr. Hosseini agreed that

Plaintiff should be prescribed Ensure but stated that Centurion's cost containment

policies prohibited him from prescribing it.  Plaintiff alleges Dr. Hosseini also

advised him that it was the Jackson County DOH's responsibility to prescribe the

supplement drinks, but the Jackson County DOH told him it was the FDOC's

responsibility.  Plaintiff alleges he suffered lipoatrophy and severe weight loss as a

result of not receiving the Ensure supplement drinks.  He states he is 5′11″ tall and

weighs 120 pounds, which places him in the "underweight" category of the body

mass index chart he attached (*see* Second Amended Complaint at 19 and attached

Exhibit 1-B).

Plaintiff does not allege any facts suggesting it was clear to any of the nurses

that deferring to Plaintiff's treating physician, Dr. Hosseini, on the matter of

prescribing Ensure would likely cause Plaintiff significant harm.  *See, e.g., Bauer v.*

*Kramer*, 424 F. App'x 917, 919 (11th Cir. 2011) (unpublished but recognized as

persuasive authority) (holding that nurses and other such prison personnel are not

---

[7] Plaintiff alleges he was seen by Nurse Carter on July 23, 2018, Nurse Murrell on August 20, 2018, Dr. Hosseini and Nurse Swearingen on August 29, 2018, and Nurse Swearingen and Nurse Williams on August 31, 2018 (Second Amended Complaint at 19).

deliberately indifferent when they reasonably follow a doctor's orders); *Holloway v. Del. Cty. Sheriff*, 700 F.3d 1063, 1075 (7th Cir. 2012) (holding that nurses may generally defer to instructions given by physicians unless it is clear that doing so will likely cause significant harm to the inmate).

Similarly, former FDOC Secretary Jones is not liable for the deprivation of Ensure drinks simply because the FDOC contracted with Centurion to provide medical treatment, which is the sole basis upon which Plaintiff seeks to hold Jones liable (*see* Second Amended Complaint at 19). *See Keith v. DeKalb Cty., Ga.*, 749 F.3d 1034, 1051 (11th Cir. 2014) (holding that the law does not require head of correctional institution to ignore the determination and recommendation of contracted medical staff).

Additionally, according to Plaintiff's allegations, the moving force behind Dr. Hosseini's failure to prescribe Ensure was Centurion's policy (*see* Second Amended Complaint at 19), not his own medical judgment. But because Plaintiff's allegations could be liberally construed as asserting alternative theories of liability (organizational liability as to Centurion based upon its policy, or individual liability as to Dr. Hosseini based upon his personal medical decision), the court should allow Plaintiff's claims against both Defendants to survive statutory screening. *See Bd. Of Cty. Comm'rs of Bryan Cty., Okla. V. Brown*, 520 U.S. 397, 404 (19997) (holding

that where a municipality's custom, practice, or policy was the "moving force" behind the constitutional injury, it can be sued directly under § 1983); *Anderson v. City of Atlanta*, 778 F.2d 678, 686 (11th Cir. 1985) (holding that "*Monell* . . . and its progeny do not require that a jury must first find an individual defendant liable before imposing liability on local government."); *see id.* ("[I]f the jury were to find, as it did, that the deprivation of Mr. Anderson's constitutional rights was a result of understaffing, then it would logically find no fault on the part of the individual arresting officers.").   Therefore, the only Defendants against whom Plaintiff has stated a plausible Eighth Amendment claim with respect to the deprivation of Ensure supplement drinks are Centurion and Dr. Hosseini.   Plaintiff's claims against the remaining Defendants named in Claim Seven should be dismissed with prejudice.

### F.    Claim Eight—Eighth and Fourteenth Amendment claims against former Secretary Jones, Angela Gaskin, and Brenda Patterson (Second Amended Complaint at 20–21).

Plaintiff alleges prior to his transfer to Apalachee C.I., his medical providers also prescribed a 4,000-calorie diet to prevent lipoatrophy and weight loss (Second Amended Complaint at 20–21).  Plaintiff alleges upon his arrival at Apalachee C.I., Dr. Hosseini informed him that the FDOC no longer offered a 4,000-calorie diet option for doctors to prescribe.  Plaintiff alleges former Secretary Jones, Defendant Gaskin (the FDOC's bureau chief in charge of the prescription diet offerings), and

Defendant Patterson (the FDOC's Lead Public Health Nutrition Consultant) are responsible for the policy of discontinuing the 4,000-calorie prescription diet option. He alleges he suffered lipoatrophy and severe weight loss as a result of the removal of the 4,000-calorie diet from the FDOC's prescription diet options.

As with Claim Seven, because Plaintiff admits that the moving force behind Dr. Hosseini's failure to prescribe a 4,000-caloire diet was the FDOC's policy, not his own medical judgment, the only plausible Eighth Amendment claim stated in Claim Eight are official capacity claims against former Secretary Jones and Defendants Gaskin and Patterson (the FDOC's bureau chief in charge of determining the FDOC's prescription diet offerings and the FDOC's Lead Public Health Nutrition Consultant, respectively).  But, because these are official capacity claims against state employees, Plaintiff's claims for monetary damages against Defendants Jones, Gaskins, and Patterson are barred by Eleventh Amendment immunity.  *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (explaining that "official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent").

This leaves only Plaintiff's claim for declaratory relief (*see* Second Amended Complaint at 30).  Because it is not subject to reasonable dispute that Julie Jones

ceased her duties as FDOC Secretary in January of 2019,[8] Plaintiff's claim against her should be dismissed as moot.  Thus, Plaintiff's claim for declaratory relief against Defendants Gaskin and Patterson is the only part of Claim Eight that survives statutory screening under § 1915(e)(2)(B).

> **G.    Claim Nine—Eighth and Fourteenth Amendment claims against former Secretary Jones, Centurion, Dr. Hosseini, Dr. Lay, Jackson County DOH, Dr. Speeding, and Nurse Streetman (Second Amended Complaint at 21–24).**
>
> **Claim Ten—Eighth and Fourteenth Amendment claims against Jackson County DOH; federal and state products liability, consumer protection and tort claims against Gilead Science, Inc.  (Second Amended Complaint at 24–28).**

Plaintiff alleges Complera **may** cause serious side effects, including lactic acidosis, increased risk of certain infections or autoimmune disorders, and decreased bone density, as indicated on the drug fact sheets he attached (Second Amended Complaint at 21–26 and attached Exhibit 1).  Plaintiff alleges during his incarceration at Apalachee C.I., he constantly complained to the institutional medical staff and medical staff with the Jackson County DOH about several side effects he was experiencing from the Complera (including severe pain in his bones,

---

[8] Federal Rule of Evidence 201 permits a court to "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2).

joints, and muscles). Plaintiff alleges he requested blood tests to determine if he was suffering from lactic acidosis, and he requested x-rays to determine if he was suffering decreased bone density, but he never received the diagnostic tests. Plaintiff alleges he also requested a different antiviral medication, but the Jackson County DOH did not change his medication from Complera to Odefsey until June 29, 2018.

A medical decision not to pursue a particular course of diagnosis or treatment is a classic example of a matter for medical judgment, an exercise of which does not represent cruel and unusual punishment. *See Estelle*, 429 U.S. at 107–08; *Adams v. Poag*, 61 F.3d 1537, 1543–45 (11th Cir. 1995); *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) (federal courts generally are reluctant to second guess medical judgments). Plaintiff's disagreement with his medical providers as to the specific antiviral medication he received and the necessity for diagnostic testing does not state a plausible Eighth Amendment claim.

In Claim Ten, Plaintiff also brings product liability claims against Gilead, the manufacturer of Complera (Second Amended Complaint at 24–28). Plaintiff asserts design defect and failure to warn claims under "Federal and State product liability and negligence laws" (*id.* at 28). He also asserts "Federal and State fraud and consumer protection claims, as well as claims for the breach of implied warranty and merchantability" (*id.*). He alleges Gilead intentionally misrepresented material facts

in its marketing and labeling of Complera (*id.*).  Plaintiff also claims Gilead failed to comply with Federal and State regulations, including the Federal Food, Drug, and Cosmetic Act ("FDCA") (*id.* at 27–28).

Rule 20 of the Federal Rules of Civil Procedure provides that persons "may be joined in one action as defendants if:  (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2).  For purposes of Rule 20(a), the Eleventh Circuit has defined transaction or occurrence as "all logically related events."  *See Alexander v. Fulton Cty., Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304, 1328 n.52 (11th Cir. 2003) (internal quotation marks and citation omitted).

Here, Plaintiff's claims against Gilead concerning its design, labeling, and marketing of Complera are not logically related to his Eighth Amendment claims of deliberate indifference against his medical providers concerning their alleged failure to properly administer the medication, failure to renew prescriptions for alleged side effects, failure to provide diagnostic testing for other side effects, and failure to change his antiviral medication sooner during the period from February 23, 2017, to

December 3, 2018. Due to the lack of a logical connective nexus between the claims against the drug manufacturer and the claims against the FDOC and Jackson County DOH Defendants, the preconditions for permissive joinder under Rule 20 are not satisfied. Plaintiff's claims against Gilead should be dismissed without prejudice to his asserting them in a separate civil action.

Accordingly, it is **ORDERED**:

Plaintiff's Motion to Exceed Page Limit (ECF No. 18) is **GRANTED ONLY TO THE EXTENT THAT** the court has considered the entirety of the Second Amended Complaint.

And it is respectfully **RECOMMENDED** that:

1.    Plaintiff's claims against Gilead Sciences, Inc. be **DISMISSED without prejudice** to Plaintiff's bringing them in a separate civil action, pursuant to Rule 20 of the Federal Rules of Civil Procedure.

2.    Plaintiff's claims against the remaining Defendants be **DISMISSED with prejudice,** pursuant to 28 U.S.C. § 1915(e)(2)(B), because they are frivolous, fail to state a claim upon which relief may be granted, or seek monetary relief against a defendant who is immune from such relief, with the exception of the following claims:

a.      Plaintiff's Eighth Amendment claims for declaratory relief and monetary damages against Centurion and Dr. Hosseini for their failure to provide Ensure supplement drinks (asserted in Claim Seven); and

b.      Plaintiff's Eighth Amendment claim for declaratory relief against Defendants Angela Gaskins and Brenda Patterson for their discontinuing the 4,000-calorie prescription diet option (asserted in Claim Eight).

3.      This case be remanded for further proceedings on the claims against Centurion, Dr. Hosseini, Angela Gaskins, and Brenda Patterson identified *supra* in paragraph 2, subsections a. and b.

4.      This case be **TRANSFERRED** to the Panama City Division of this Court, pursuant to Local Rule 3.1(B)–(C).

At Pensacola, Florida, this 11th day of May 2020.


/s/ Elizabeth M. Timothy
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or**

**recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**

Case No.:  3:19cv1713/RV/EMT